IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 8:08CR356 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | MEMORANDUM AND ORDER |
| MARK DORSETT, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the defendant's objections, Filing No. 55, to the report and recommendation ("R&R") of the magistrate judge, Filing No. 54, denying the defendant's motion to suppress, Filing No. 25, and motion to dismiss, Filing No. 27. The defendant is charged in the Superseding Indictment with the possession with intent to distribute more than fifty grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1) (Count I), possessing a firearm in furtherance of a drug crime in violation of 18 U.S.C. § 924(c)(1)(A) (Count II), and forfeiture of a firearm under 18 U.S.C. § 924(d) and 28 U.S.C. § 2461 (Count III). Filing No. 29 Superseding Indictment.

Under 28 U.S.C. § 636(b)(1(c), the court makes a de novo determination of those portions of the report and recommendation to which the parties object. *United States v. Lothridge,* 324 F. 3d 599, 600-01(8th Cir. 2003). The court has conducted a de novo review of the record, including the hearing transcript, Filing No. 45, Exhibits 1, 2, 101, 102, 103, and the relevant law. The court generally agrees with the magistrate judge's recitation of the facts, but finds that the defendant did not materially breach the non-prosecution agreement. The defendant's objection to the magistrate judge's finding on the issue of breach is sustained, and the defendant's motion to dismiss is granted.

**I.     Background**

The magistrate judge held an evidentiary hearing in this case. On Tuesday, July 17, 2007, Omaha Police Department ("OPD") Narcotics Officer, Mark Lang ("Investigator Lang") received information regarding a party known as "Mejia" distributing methamphetamine from a residence (Ex. 1 at 1). Investigator Lang began surveillance of the home that day and observed "Mejia" leave the residence (Ex. 1 at 2). Shortly thereafter, OPD officers seized one-and-one-half pounds of methamphetamine from "Mejia" (Ex. 1 at 2). Officers continued surveillance of the residence and observed the defendant arrive in a van (Ex. 1 at 2). Narcotics officers approached the defendant and asked for permission to search his person for weapons (Ex. 1 at 3). The defendant stated that he had knives in his possession (TR. 14). The officers then recovered two knives from the defendant and placed him under arrest for possessing concealed weapons (TR 14; Ex. 101). The officers impounded the defendant's van and obtained a search warrant (Ex. 1 at 3). Officers searched the defendant's van and seized eight ounces of methamphetamine, drug paraphernalia, money, a firearm, and ammunition (Ex. 2).

After the defendant's arrest, Glenn A. Shapiro ("Mr. Shapiro"), attorney for the defendant, contacted Assistant U.S. Attorney Nancy A. Svoboda ("Ms. Svoboda") to offer the defendant's cooperation in police investigations in exchange for an agreement not to prosecute the defendant in federal court (TR. 43). On November 2, 2007, Ms. Svoboda sent a note to the defendant's counsel, Mr. Shapiro. The note states, in its entirety:

> Lang arrested Dorsett w/ ½ # of meth.  State charges filed.  Lang & I have
> agreed Dorsett will "work" for Lang.  As long as Dorsett is "good," I won't file
> fed charges against him, re: that ½ #.

2

(Ex. 103). The agreement did not specify any required minimum narcotics seizure amount or any other details related to the cooperation.

Investigator Lang contacted the defendant concerning the cooperation, and the defendant agreed to "work" with Investigator Lang (TR. 42; 44). Investigator Lang and the defendant discussed what his potential for purchases might be based on the amount of drugs the defendant possessed at the time of his arrest (TR. 58). Investigator Lang testified that he was interested in methamphetamine, but would also open the investigation to other narcotics or weapons (TR. 58-59). Investigator Lang testified that he told the defendant he did not want any small, user-amount drug transactions, and he wanted narcotics seizures that were equal to or larger than the amount—8 ounces—that officers seized from the defendant during his arrest (TR. 59). Investigator Lang also testified that he told the defendant he needed "five good quality investigations" (TR. 61).

While under the supervision of Investigator Lang, the defendant orchestrated a deal with Dan Palmer ("Palmer deal") (TR. 45, 63). The Palmer deal was executed on October 3, 2007 (TR. 63-65). Officers made three arrests as a result of the Palmer deal and seized 8 ounces of methamphetamine from Dan Palmer, 3.5 grams from the second party, and 14.5 grams from the third party (TR. 63-64). Investigator Lang testified that he was "very happy" with the results of the Palmer Deal (TR. 71). In addition to the Palmer deal, the defendant provided Investigator Lang with information regarding some of his suppliers (TR. 46). Investigator Lang testified that the defendant told him no one would work with him after the Palmer deal (TR. 65). Investigator Lang acknowledged that it can be difficult to make narcotics purchases once an individual is known to be working with police (Tr. 47-48). Additionally, Investigator Lang knew that one of the defendant's main suppliers had

been arrested on the same day as the defendant (TR. 47-48). The defendant did not complete any further operations with Investigator Lang prior to Investigator Lang's retirement from OPD on December 14, 2007 (TR. 65).

Shawn Hagerty ("Mr. Hagerty"), an attorney for the County Attorney's Office in Douglas County, Nebraska, had filed state charges against the defendant in September 2007 (TR. 30). Investigator Lang informed Mr. Hagerty of the defendant's cooperation and requested that Mr. Hagerty consider the cooperation when negotiating a plea agreement (TR. 71). Mr. Hagerty offered the defendant a state court plea to a Class II felony, punishable for one to fifty years' imprisonment (TR. 23-25). The defendant did not accept this offer and chose to cooperate further with law enforcement (TR. 25). In December 2007, the defendant's counsel filed a motion to suppress in state court, and a hearing on the motion was continued for approximately four to six months to allow time for plea negotiations (TR. 26-27, 31-32). In the summer of 2008, Mr. Hagerty offered the defendant an opportunity to plead to a Class III felony with no sentencing recommendation (TR. 27). The Class III felony is punishable for a minimum of one to twenty years' imprisonment (TR. 36). The defendant again rejected the offer and indicated that he wanted to cooperate further with law enforcement and had something new to offer (Tr. 52-53).

Investigator Lang directed the defendant to contact OPD Officer Bob Laney ("Officer Laney") and OPD Sergeant Jonathan Waller ("Sergeant Waller") since Investigator Lang had retired from OPD (TR. 26, 49-50, 53). In August 2008, the defendant met with the officers to discuss potential operations (TR. 53, 79-80). The meeting lasted for approximately an hour-and-a-half during which time the defendant disclosed the identity of narcotics distributors and drove with the officers to show them the individuals'

4

residences (TR. 90). Sergeant Waller testified that he explained to the defendant that they wanted him to set up narcotics purchases for as "big amounts as he could possibly buy." (TR. 90). Sergeant Waller admitted that he did not specify any minimum amount of narcotics that the defendant was required to purchase (TR. 90). Sergeant Waller testified that, "We basically left it up to Mr. Dorsett whatever he could do. We wanted the bigger stuff, but whatever he could do" (TR. 92).

The defendant organized four narcotics purchases under the supervision of Sergeant Waller (TR. 80-87). The defendant wore a wire during each operation (TR. 86). Sergeant Waller testified that wearing a wire during these operations is potentially dangerous, and that the officers had to take extreme precautions to ensure the defendant's safety (TR. 86-87). The defendant did not complete the first potential purchase because the parties were unable to make contact with the narcotics supplier (TR. 80). During the second operation, the defendant led Sergeant Waller to a source of narcotics and purchased one ounce of powder cocaine (TR. 81-82). Officers subsequently arrested that cocaine supplier (TR. 81). Investigator Lang testified that one ounce of powder cocaine is not typically considered a user amount, and is more likely to be considered a distribution amount (TR. 74). The defendant then arranged a third purchase which led to two arrests (TR. 85-86). The officers seized one-half ounce of methamphetamine from the buyer in that transaction, and .2 or .4 grams of methamphetamine from the suspected dealer (TR. 85-86). In the fourth transaction, the defendant arranged a buy of one ounce of powder cocaine (TR. 93). Sergeant Waller testified that the defendant was not able to complete the purchase because it was not scheduled within the officer's normal shift hours for that day (TR. 93-95). Sergeant Waller conceded that he could have arrested the individual for

delivery of one ounce of powder cocaine and that the purchase might have led to additional sources (TR. 97). Sergeant Waller further testified that he did not want to arrest the individual delivering the narcotics because she was the girlfriend of the suspected supplier (TR. 94). Sergeant Waller admitted that the reasons the fourth transaction was not fruitful were not the fault of the defendant (TR. 80, 83, 97). Sergeant Waller testified that the defendant followed all directions and that his personal dissatisfaction with the operation came from the size of the narcotics seizures, not from any lack of cooperation (TR. 88-89; 91-92).

    Following Investigator Lang's retirement from OPD, he began working as a criminal investigator with the Douglas County Attorney's Office. Investigator Lang was aware that Mr. Hagerty offered the defendant a Class III felony charge in state court (TR. 52). Investigator Lang was present in state court when the defendant did not accept this plea, and instead continued the hearing on the motion to suppress (TR. 52-53). Investigator Lang contacted Ms. Svoboda regarding the defendant's situation (TR. 52-53, 72). Investigator Lang testified that he contacted Ms. Svoboda "to tell [her], hey what . . . was going on with Mr. Dorsett. And just felt that . . . he . . . basically wanted to walk on this and he wasn't accepting what the state [offered]." (TR. 72). Investigator Lang explained that he was not pleased that the defendant had filed a suppression motion in the state court case (TR. 74-75). Investigator Lang stated that he "did not understand" why the defendant was pursuing the motion because he believed they were doing him a "great service" by agreeing not to prosecute in federal court (TR. 74-75). After Investigator Lang's conversation with Ms. Svoboda, the grand jury indicted the defendant in federal court (TR. 29). Mr. Hagerty dismissed the state charges after the federal indictment (TR. 29).

In his motion to dismiss, the defendant argues that the government violated the non-prosecution agreement made between the United State's Attorney's Office and himself. The magistrate judge found the defendant materially breached his duty under the agreement because "his actions and results, in number and quality, were not sufficient to satisfy the requirements set forth in the non-prosecution agreement." The defendant objects, *inter alia*, to the magistrate judge's conclusion that the defendant materially breached the non-prosecution agreement thereby relieving the government of its duty. He contends that he did not materially breach the non-prosecution agreement because he worked as an informant in multiple transactions and executed his duties to the best of his abilities.

**II.   Discussion**

"Cooperation-immunity agreements are contractual in nature and subject to contract law standards." *United States v. Johnson,* 861 F.2d 510, 512 (8th Cir. 1988). Non-prosecution agreements are similar to plea agreements, except adherence to a non-prosecution agreement is the responsibility of the prosecutor alone while a plea agreement is subject to the approval of the court. *United States v. Minnesota Mining & Mfg. Co.,* 551 F. 2d 1106, 1112 (8th Cir. 1977). "Within the context of constitutional safeguards for due process, non-prosecution agreements may be enforced under principles of contract law." *United States v. Hyles,* 521 F.3d 946, 952 (8th Cir. 2008) (citing *United States v. Crawford,* 20 F.3d 933, 935 (8th Cir. 1994)). "With an agreement not to prosecute, parties agree that the defendant's cooperation is sufficient consideration for the government's promise of immunity." *Johnson,* 861 F.2d at 512. If the terms of the agreement are ambiguous, "the

7

ambiguities are construed against the government." *See United States v. Andis,* 333 F. 3d 886, 890 (8th Cir. 2003) (citing *Margalli-Olvera v. INS,* 43 F.3d 354, 351 (8th Cir. 1994)).

"Only a material breach is sufficient to excuse the government of its performance." *Hyles,* 521 F.3d at 952 (quoting *Crawford,* 20 F.3d at 935). "The question of a defendant's breach is not an issue to be finally determined unilaterally by the government." *Johnson,* 861 F.2d at 513 (citing *United States v. Brown,* 801 F.2d 352, 355 (8th Cir. 1986) (citing *United States v. Calabrese,* 645 F.2d 1379, 1390 (10th Cir. 1981)). The government has the burden of establishing a breach, and if the defendant did not breach the agreement, "fundamental fairness requires the government to uphold its part of the agreement and the district court may enforce the agreement by dismissing the indictment." *Id*. The court considers three significant factors when determining if a defendant breached a non-prosecution agreement: 1) the extent to which the government will be deprived of the benefit which it reasonably expected; 2) the likelihood that the defendant will cure, and 3) whether the defendant acted in good faith. *Crawford,* 20 F.3d at 935 (citing Restatement (Second) of Contracts § 241 at 237 (1981)).

### III. Analysis

The parties agree that the written agreement was a conditional non-prosecution agreement (Filing Nos. 48, 55). The issue presented in the defendant's motion to dismiss is whether the defendant materially breached the non-prosecution agreement. The court finds that the defendant did not.

The court finds the government was not deprived of the benefit of the bargain it reasonably should have expected. In the non-prosecution agreement, the government set forth a standard (Ex. 103). If the defendant were "good" while working with law

enforcement officers, then the government would not indict the defendant (Ex. 103). The agreement does not further define the term "good," and the agreement does not specify any minimum required narcotics seizure amounts (Ex. 103). Although the law enforcement officers may have conveyed some indication of the desired seizure amounts, these amounts were not specified in the non-prosecution agreement (Ex. 103). The officers in charge of executing the agreement did not clearly and consistently communicate the standards for satisfying the defendant's obligations under the agreement. The court finds that although law enforcement officers may have desired a better result in number or quantity of drug buys, the defendant did not materially breach the non-prosecution agreement. The results of the drug buys, in number and quantity, were ultimately outside the defendant's control. Based on the circumstances and the terms of the written agreement, the government reasonably should have expected as the benefit of its bargain that the defendant would cooperate in working with law enforcement, but could not reasonably expect minimum narcotic seizure amounts. The government cannot unilaterally declare that the defendant materially breached the agreement based on standards that were not clearly articulated in the agreement or consistently conveyed by the controlling law enforcement officers. See *Johnson,* 861 F.2d at 513.

This is not a case in which the government expressly reserves the right to determine cooperation in its sole discretion. See *Padilla v. United States,* 68 F.3d 479, 1995 WL590451 (per curiam, unpublished opinion) (8th Cir. 1995) (involving a plea agreement that provided "the government will have complete and sole discretion to make or withhold either motion for a downward departure based on its assessment of the value of the defendant's cooperation"); *United States v. Murphy,* 248 F.3d 777, 778 (8th Cir. 2001)

(involving a cooperation agreement where the United States Attorney retained sole discretion to determine whether the defendant provided substantial assistance). These cases show that the government knows how to retain sole discretion in determining whether the defendant's cooperation is sufficient. Where the government did not bargain for and include a provision that it could determine whether the defendant provided the requisite cooperation in its sole discretion, it cannot later assert that right. As the Eighth Circuit stated in *Johnson,* "we are somewhat disturbed by the ability of the government to make a *post hoc* determination of what constitutes cooperation." 861 F.2d at 513 n.3.

The government did not provide the defendant with the opportunity to cure any perceived deficiency in his cooperation under the agreement. To the extent that law enforcement officers were dissatisfied with the transactions that the defendant facilitated, they had the authority to continue to utilize the defendant for further transactions. The record does not show that the government informed the defendant that it believed he had breached the non-prosecution agreement, nor that the government gave the defendant an adequate opportunity to cure any perceived breach prior to the indictment.

The court finds the defendant's behavior comports with standards of good faith and fair dealing. The defendant worked with officers on five operations and wore a wire during each of these operations. One of the officers in charge of the defendant's cooperation described his level of satisfaction as "very happy." Another officer in charge of the defendant's cooperation testified that the defendant followed all directions, and there was nothing he asked of the defendant that the defendant did not do. The officers acknowledged the difficulty in setting up larger buys in light of the fact that a cooperating defendant may have been known as an informant. The facts do not show that the

defendant failed to comport with standards of good faith and fair dealing. In contrast, the evidence suggests the government's motivation may have been displeasure with the defendant for exercising his right to file a motion to suppress in state court, rather than dissatisfaction with his level of cooperation.

Moreover, the court finds that enforcing this agreement is in accord with public policy. See *Johnson,* 861 F.2d at 513. As in *Johnson,* "the prosecutor must have felt that the public would be better served by gaining [the defendant's] information than by [his] conviction." *Id.* The government gave its word that the defendant would not be prosecuted if he cooperated with law enforcement. The defendant cooperated with law enforcement officers by arranging narcotics purchases while wearing a wire, undoubtedly putting himself at risk of personal injury. After the defendant performed, the government reneged on its end of the agreement and proceeded with a federal prosecution. In all of the practice of law, but especially in the case of counsel for the government, the attorney's word should be infallible. "With respect to federal prosecutions, the courts' concerns run even wider than protection of the defendant's individual constitutional rights—to concerns for the honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government." *United States v. Thompson,* 403 F.3d 1037, 1039 (8th Cir. 2005) (quoting *United States v. Harvey,* 791 F.2d 294, 300 (4th Cir. 1986)).

The court finds that this defendant did not materially breach the non-prosecution agreement, and the defendant's motion to dismiss should be granted. In light of this determination, the court need not address the defendant's other contentions.

IT IS ORDERED:

1.  Defendant's objection (Filing No. 55) to the report and recommendation of the magistrate judge (Filing No. 54) is sustained;

2.  Defendant's motion to dismiss (Filing No. 27) is granted.

DATED this 23rd day of July, 2009.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.